Filed 3/12/24  P. v. Rodriguez CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>CARLOS NEGRETE RODRIGUEZ,<br><br>　　　Defendant and Appellant. | A170528<br><br>(Solano County<br>Super. Ct. No. VCR220337) |

In 2016, Carlos Negrete Rodriguez pled no contest to attempted murder (Pen. Code, §§ 187, subd. (a), 664) and five other felonies, for which he was sentenced to a total term of 32 years in prison.[1]

In 2024, Rodriguez petitioned for resentencing under section 1172.6.[2] The trial court found Rodriguez failed to make a prima facie showing that he was eligible for resentencing and denied the petition.  On appeal, Rodriguez argues the trial court erred in finding he was ineligible for relief as a matter of law.  We affirm the trial court's order but remand to provide Rodriguez the opportunity to amend his petition.

---

[1] All further statutory references are to the Penal Code.

[2] Effective June 30, 2022, the Legislature renumbered section 1170.95 to section 1172.6, with no substantive changes in the statute.  (Stats. 2022 (2021–2022 Reg. Sess.) ch. 58, § 10.)  We cite to section 1172.6 throughout this opinion for ease of reference.

1

## FACTUAL AND PROCEDURAL BACKGROUND

*General Background*

In 2014, Rodriguez was involved in a shooting that occurred at a small party at a house belonging to Elba Montes. After a night of drinking, Rodriguez got into an argument with those present, left, came back with a rifle, and fired the rifle at Montes's face. Among those also present were Rodriguez's infant child, the mother of his child, and Lisa Rodriguez (no relation to appellant).[3]

*Preliminary Hearing Testimony*[4]

The pertinent uncontroverted testimony at the preliminary hearing was as follows.

Lisa testified the group was drinking beer one night in Montes's bedroom until the morning hours. Around 5:00 a.m., Rodriguez got into an argument with the mother of his child and left the house. He returned 20 minutes later and stood outside a window looking in on the group. He was angry and yelling about how he wanted his son. After one of the partygoers told him to go home, Rodriguez again left.

Rodriguez later returned to the same window, this time carrying a rifle. While still standing outside the window, he said he was not afraid to shoot and fired a shot into the air (apparently outside the house). Rodriguez then aimed the rifle at Lisa and Montes, going back and forth between the two of them. He then fired the rifle while aiming at Montes, hitting her in the cheek.

---

[3] For ease of comprehension, and intending no disrespect, we refer to Lisa Rodriguez by her first name.

[4] On November 12, 2024, we granted the Attorney General's unopposed motion to augment the record on appeal with the preliminary hearing transcript.

Montes's testimony was consistent with Lisa's testimony as to the series of events leading up to the shooting. Montes stated the last thing she remembered was the rifle being fired at her and then screaming. She had extensive injuries to her face, requiring numerous surgeries and significant rehabilitation.

The cross-examination of Lisa and Montes largely sought to establish that everyone at the party was drinking and there may have been a sharp object in the room that could have been used to threaten Rodriguez (though no evidence of any threat was presented). There was no testimony that anyone other than Rodriguez was the perpetrator and no evidence of any accomplices.

*Charges and Plea Proceedings*

In 2015, Rodriguez was charged by second amended information with one count of attempted willful, deliberate, premeditated murder (§§ 187, 664); one count of mayhem (§ 203); three counts of assault with a firearm (§ 245, subd. (a)(2)); and one count of shooting at an inhabited dwelling (§ 246).

As to the attempted murder count, the information alleged Rodriguez personally and intentionally discharged a firearm (§ 12022.53, subd. (c)), personally used a firearm (§§ 12022.5, subd. (a)(1), 12022.53, subd. (b)), personally and intentionally discharged a firearm, which proximately caused great bodily injury (§ 12022.53, subd. (d)), and personally inflicted great bodily injury upon the victim (§ 12022.7, subd. (a)).

In 2016, pursuant to a negotiated plea deal, the prosecution struck from the information that the attempted murder was willful, deliberate, and premeditated. Rodriguez pled no contest to all counts in the information so amended. He also admitted two enhancements to the attempted murder count: (1) that he personally and intentionally discharged a firearm within

3

the meaning of section 12022.53, subdivision (c); and (2) that he personally inflicted great bodily injury upon the victim within the meaning of section 12022.7, subdivision (a). The remaining enhancement allegations were dismissed.

Rodriguez stipulated that the preliminary hearing transcript provided the factual basis for his plea. The transcript provided the sole factual basis for the plea.

In April 2016, consistent with the negotiated plea deal, the trial court sentenced Rodriguez to a total term of 32 years in prison.

*Section 1172.6 Proceedings*

In January 2024, Rodriguez petitioned in propria persona for resentencing under section 1172.6. Rodriguez used the Judicial Council section 1172.6 petition for resentencing form and checked the following boxes: (1) an information was filed against him that allowed the prosecution to proceed under a theory of attempted murder under the natural and probable consequences doctrine; (2) he accepted a plea offer in lieu of a trial at which he could have been convicted of attempted murder; and (3) he could not presently be convicted of attempted murder because of changes made to sections 188 and 189, effective January 1, 2019.

The prosecution filed a response asserting Rodriguez failed to make a prima facie showing that he was eligible for resentencing under section 1172.6 because he "*was* convicted as the actual attempted killer who personally discharged a firearm and personally inflicted great bodily injury on the victim." The answer recounted the plea and admissions described above and noted the evidence at the preliminary hearing established the factual basis for the plea. Finally, the answer averred the petition should be denied as "the record of conviction (Information, plea form, and preliminary

4

hearing transcript) conclusively establishes that petitioner was the actual attempted killer of the victim."

The trial court appointed counsel to represent Rodriguez. Appointed counsel did not file any supplement to Rodriguez's previously filed resentencing petition or any reply to the answer.

At an April 2024 hearing, the parties stated they were prepared to submit the matter on the petition and answer without further argument. The court denied the petition, stating: "At this time the Court has read and considered the Petition and the Response, and the Court at this time will deny the Petition outright, and so the Petition is denied. Sentence will remain as pronounced by the Court, and that will be the order." The parties agree the preliminary hearing transcript was not provided to or considered by the trial court.

Rodriguez appealed.

### DISCUSSION

Rodriguez avers the trial court erred by denying his section 1172.6 petition at the prima facie stage as the record of conviction does not conclusively establish he is ineligible for relief. We review this issue de novo. (*People v. Williams* (2022) 86 Cal.App.5th 1244, 1251.)

## I. Legal Framework

We begin with an overview of the legal principles applicable to our analysis.

### A. Changes to Homicide Law

Effective January 1, 2019, the Legislature passed Senate Bill No. 1437, making ameliorative changes to California's homicide law. (*People v. Patton* (Mar. 3, 2025, S279670) __Cal.5th__ [2025 WL 666005, at p. *2] (*Patton*).) "As part of these ameliorative changes, malice . . . may no longer be imputed

5

to a defendant solely because the defendant participated in another crime." (*Ibid.*) As a result, "a defendant is no longer guilty of murder as an aider and abettor solely because the 'natural and probable consequences' of that other crime included a confederate's commission of murder." (*Ibid.*)

Senate Bill No. 1437 also created a procedure for those convicted of murder under the former law to seek retroactive relief by filing a petition for resentencing under section 1172.6. (*People v. Strong* (2022) 13 Cal.5th 698, 708; § 1172.6.) The Legislature subsequently extended that procedure to those who were convicted of attempted murder under the natural and probable consequences doctrine. (*Patton, supra*, __Cal.5th__ [2025 WL 666005, at p. *2]; § 1172.6, subd. (a).)

Such persons may seek relief under section 1172.6 when three conditions apply. (§ 1172.6, subd. (a).) "As relevant here, given the nature of [Rodriguez's] prosecution, those enumerated conditions are: First, the charging document allowed the prosecution to 'proceed under a theory of . . . attempted murder under a natural and probable consequences doctrine.' (*Id.*, subd. (a)(1).) Second, petitioner . . . accepted a plea offer in lieu of trial on [an attempted murder] charge. (*Id.*, subd. (a)(2).) And third, 'petitioner could not be presently convicted' of the charge, given the changes to homicide law effective in 2019. (*Id.*, subd. (a)(3).)" (*Patton, supra*, __Cal.5th__ [2025 WL 666005, at p. *2.])

The statute sets forth a three-step process by which such petitions are adjudicated. (§ 1172.6, subds. (b)–(d).) First, a petitioner must file a facially sufficient petition by indicating, among other criteria, that he meets the three requirements in subdivision (a). (*Id.*, subd. (b).) Second, if a facially sufficient petition is filed, the parties have an opportunity to submit briefing before the court holds a hearing to determine if the petitioner has made a

6

prima facie case for relief. (*Id.*, subd. (c).) Third, if the court determines a prima facie showing has been made, it issues an order to show cause and holds an evidentiary hearing on "the ultimate question of resentencing at which the People will bear the burden of defending a conviction under the amended law." (*Patton, supra,* __Cal.5th__ [2025 WL 666005, at p. *1]; § 1172.6, subds. (c), (d).)

## B. Prima Facie Inquiry After *Patton*

At the prima facie stage, a court may look at the record of conviction to "distinguish petitions with potential merit from those that are clearly meritless." (*People v. Lewis* (2021) 11 Cal.5th 952, 971.) In making this "limited" inquiry, the court should not engage in factfinding; rather, " ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' " (*Id.* at pp. 971–972.)

In *Patton*, the California Supreme Court recently provided clarification on the prima facie inquiry under section 1172.6. (*Patton, supra,* __Cal.5th__ [2025 WL 666005, at pp. *5–*10].) Like Rodriguez, Patton pled no contest to attempted murder and admitted that he personally and intentionally discharged a firearm within the meaning of section 12022.53, subdivision (c). (*Id.* at p. __ [2025 WL 666005, at p. *2].) Also like Rodriguez, Patton filed a form section 1172.6 petition and offered no specific facts in support.[5] (*Id.* at p. __ [2025 WL 666005, at p. *3].) The trial court deemed the petition facially sufficient and appointed counsel, and the prosecution filed a response

---

[5] Rodriguez included additional pages of argument to his form petition in support of his challenge to sentencing enhancements; those pages did not raise any specific facts explaining how he was eligible for relief under section 1172.6.

7

asserting Patton could not make a prima facie case for relief because, based on facts in the preliminary hearing transcript, he was the sole participant in the shooting. (*Id.* at p. __ [2025 WL 666005, at p. *3].) Patton filed no reply and declined to present any argument at the prima facie hearing. (*Id.* at p. __ [2025 WL 666005, at pp. *3–*4].) The trial court denied the petition and the court of appeal affirmed. (*Id.* at p. __ [2025 WL 666005, at p. *4].)

Both the trial and appellate courts in *Patton* relied on uncontroverted facts in the preliminary hearing transcript showing Patton was convicted as the sole shooter, acting alone, in determining he was convicted under a theory of attempted murder that survived changes made to the homicide law, thereby rendering him ineligible for resentencing. (*Patton, supra,* __Cal.5th__ [2025 WL 666005, at pp. *4, *6] (citing *People v. Delgadillo* (2022) 14 Cal.5th 216, 233 (*Delgadillo*) [petitioner could not have made a prima facie showing of relief because he was the "only participant in the killing" and therefore not convicted under an invalid theory]).)

Noting a divergence of opinions as to whether reliance on a preliminary hearing transcript at the prima facie stage was proper, the California Supreme Court ruled: "[A] court, in determining at the prima facie stage whether a petitioner was convicted under a now-invalid theory, [may] rely on unchallenged, relief-foreclosing facts within a preliminary hearing transcript to refute conclusory, checkbox allegations." (*Patton, supra,* __Cal.5th__ [2025 WL 666005, at pp. *4, *6].)

The Court reasoned that "[c]onclusory allegations, such as the checkbox ones offered here, are particularly subject to refutation by the record of conviction." (*Patton, supra,* __Cal.5th__ [2025 WL 666005, at p. *6].) Requiring nonconclusory allegations merely reflects that a petitioner must make a prima facie showing to "frame a disputed issue that entitles that

8

petitioner to an evidentiary hearing"; therefore, "a section 1172.6 petitioner who, despite having access to counsel upon submission of a facially sufficient petition, offers only conclusory allegations of entitlement to relief, in response to a record of conviction that demonstrates the petitioner's conviction was under a still-valid theory, has not, thereby, made a prima facie showing." (*Id.* at p. __ [2025 WL 666005, at pp. *7–*8].)

The Court concluded "there is no dispute that the record of conviction the parties may consult at the prima facie stage includes a preliminary hearing transcript preceding a guilty plea." (*Patton, supra,* __Cal.5th__ [2025 WL 666005, at p. *9].) It disapproved of "condition[ing] the use of preliminary hearing transcripts on whether a petitioner previously admitted the truth of testimony contained therein or stipulated to the transcript as the factual basis of a plea." (*Id.* at p. __ & fn. 12 [2025 WL 666005, at p. *10 & fn. 12].)

With this legal framework in mind, we turn to the issue presented in this case: whether Rodriguez failed to make a prima facie case for relief. For the reasons discussed below, and based on our independent review of the record, we conclude he has not made a prima facie showing.

## II. Conclusory Allegations in the Petition Fail to Make a Prima Facie Case for Relief in Response to the Record of Conviction

Rodriguez asserts that the record of conviction does not establish he is ineligible for resentencing as a matter of law. Specifically, he contends the charging and plea documents do not show he was the sole perpetrator. He further asserts the preliminary hearing transcript does not preclude relief as, even if the transcript may be considered at the prima facie stage—which he disputes—he did not admit the truth of any testimony therein. Briefing concluded prior to the issuance of *Patton*, which forecloses his arguments on

9

appeal. (*Patton*, *supra*, __Cal.5th__ [2025 WL 666005, at pp. *9–*10] [preliminary hearing transcripts may be considered at the prima facie stage even where petitioner does not admit the truth of the testimony therein].)

Although the preliminary hearing transcript was not provided to the trial court, we exercise our discretion to conduct an independent review of the record, including the transcript. (*Delgadillo*, *supra*, 14 Cal.5th at p. 233, fn. 6.)

Undisputed facts in the preliminary hearing transcript show Rodriguez was the sole perpetrator, acting without any accomplice. No testimony at the hearing, including on cross-examination, even suggested that anyone other than Rodriguez was the direct perpetrator of the attempted murder of Montes. It therefore refutes the conclusory allegations in the resentencing petition that he was convicted on a now-invalid theory of attempted murder. (See *Patton*, *supra*, __Cal.5th__ [2025 WL 666005, at p. *10] [petitioner fails to make a prima facie showing based on conclusory allegations in response to a record of conviction showing he was the sole shooter, acting alone, thereby foreclosing claim that attempted murder conviction was under a now-invalid homicide theory]; *Delgadillo*, *supra*, 14 Cal.5th at p. 233 [no prima facie showing of relief where petitioner was the "only participant in the killing" and not convicted under an invalid theory].)

Rodriguez had "multiple opportunities to proffer specific facts," including in the petition itself, in a substitute or supplemental petition for resentencing after appointment of counsel, in a reply to the response, and in arguments at the April 2024 prima facie hearing. (*Patton*, *supra*, __Cal.5th__ [2025 WL 666005, at p. *9].) Yet he failed to avail himself of any opportunity to point to specific facts identifying someone else as the direct perpetrator of the attempted murder or otherwise creating a dispute as to the basis of his

10

conviction. (See *id.* at p. __ [2025 WL 666005, at p. *8] ["[A]bsent specific facts, no . . . dispute [as to the basis of the conviction] arises . . . from mere latent, speculative possibilities; that is, a hypothetical alternate direct perpetrator cannot be conjured from thin air or a legal conclusion."].) Even in his appellate briefing—including after the preliminary hearing transcript was made part of the record on appeal—Rodriguez points to no fact refuting the undisputed testimony in the preliminary hearing transcript showing he was the direct perpetrator. (See *id.* at p. __ [2025 WL 666005, at pp. *4, *10] [appellate court correctly affirmed denial of resentencing petition where petitioner never suggested facts in trial court or on appeal to demonstrate someone else shot victim].)

In sum, just like in *Patton*, as "statements within [Rodriguez's] preliminary hearing transcript contributed specific factual assertions about his conviction—namely, that it was premised on him being the sole shooter"—his "conclusory checkbox allegations alone could not create a factual dispute about whether he played a meaningfully different role in the attempted murder." (See *Patton*, *supra*, __Cal.5th__ [2025 WL 666005, at p. *9].) Accordingly, on this record, Rodriguez has not made a prima facie case for relief under section 1172.6. (See *id.* at p. __ [2025 WL 666005, at p. *10].)

In light of counsel's failure to present the trial court with the preliminary hearing transcript, and in an abundance of caution, we will remand this matter with directions for the superior court to consider an amended petition should Rodriguez seek to file one within 30 days of remand. We express no opinion on the viability of any additional facts Rodriguez may allege.

11

## DISPOSITION

We remand this matter to the trial court with directions to consider an amended petition should Rodriguez, within 30 days of remand, seek to file one. We otherwise affirm the order denying Rodriguez's section 1172.6 resentencing petition.

_____

Petrou, J.

WE CONCUR:

_____

Tucher, P. J.

_____

Fujisaki, J.

A170528/*People v. Rodriguez*

12